UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER NDIAGU,<br><br>    Petitioner,<br><br>    v.<br><br>MARCUS POLLARD, Acting Warden,<br><br>    Respondent. | Case No. 2:19-cv-06074-JDE<br><br>MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS, IN PART, AND DISMISSING PETITION |

**I.**

**BACKGROUND**

On July 4, 2019,[1] Petitioner Christopher Ndiagu constructively filed a pro se Petition for Writ of Habeas Corpus by a Person in State Custody with supporting exhibits ("Petition" or "Pet.") pursuant to 28 U.S.C. § 2254. Dkt. 1.

---

[1] Under the "mailbox rule," "a legal document is deemed filed on the date a petitioner delivers it to the prison authorities for filing by mail." Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). Here, the parties disagree regarding the applicable "deemed filed" dates. Petitioner relies on the signature dates and proofs of service, while Respondent relies on the actual filing dates and/or prison legal mail logs. For purposes of this Order, the Court affords Petitioner the benefit of the earlier signature dates, unless otherwise noted. The Court uses the signature date on the envelope containing the Petition as the "filing" date of the Petition.

1

As the Petition appeared untimely, on July 19, 2019, the Court issued an Order to Show Cause why the action should not be dismissed as untimely. Dkt. 4 ("OSC"). Petitioner filed his response on August 16, 2019. Dkt. 7 ("Resp.") On August 20, 2019, the Court discharged the OSC, concluding that the timeliness issue, should Respondent raise the issue, would be best resolved with the consideration of the relevant state court records and relevant records possessed by the California Department of Corrections and Rehabilitation. Dkt. 8. The Court made no determination at that time regarding whether the Petition was timely or whether Petitioner was entitled to tolling, and by separate order, directed Respondent to respond to the Petition.

On September 19, 2019, Respondent filed a Motion to Dismiss on the grounds that the Petition is untimely and four of Petitioner's claims are procedurally defaulted. Dkt. 12 ("Motion"). Petitioner filed his Opposition to the Motion on October 11, 2019. Dkt. 15 ("Opp."). Respondent filed a Reply on November 25, 2019 (Dkt. 18, "Reply"), together with additional evidence. The Court afforded Petitioner an opportunity to respond, and Petitioner filed a Supplemental Opposition on December 18, 2019. Dkt. 21 ("Supp. Opp.").[2] On the same date, Petitioner also filed a Motion to File New Evidence (Dkt. 22), which the Court grants to the extent the evidence bears upon the issues and evidence raised in Respondent's Reply.[3]

The parties have consented to proceed before the undersigned Magistrate Judge. For the reasons discussed below, the Motion is granted, in part, and the Petition is denied as untimely and this action is dismissed with prejudice.

---

[2] As such, Petitioner's request to strike Respondent's additional evidence is denied.

[3] Several of the new documents submitted by Petitioner, including a November 2019 inquiry regarding why his legal mail was being opened, do not appear to bear on whether the Petition was timely filed.

## II.
## PROCEDURAL HISTORY

On April 6, 2015, a Los Angeles County Superior Court jury found Petitioner guilty of driving under the influence causing injury and driving with .08 percent or greater blood alcohol level causing injury and found true seven great bodily injury enhancements. Pet. at 2 (CM/ECF pagination is used herein for references to the Petition); Respondent's Notice of Lodging ("Lodgment") 1 at 2. In a bifurcated proceeding, the trial court found Petitioner had two prior convictions for driving under the influence. On July 9, 2015, Petitioner was sentenced to fifteen years in state prison. Id.

Meanwhile, on July 3, 2015, Petitioner constructively filed a habeas petition in the California Court of Appeal. Lodgment 3. That petition was denied on July 30, 2015. Lodgment 4. On August 17, 2015, Petitioner filed another habeas petition in the California Court of Appeal,[4] which was denied on September 30, 2015. Lodgments 5-6.

Petitioner also appealed his conviction and sentence to the California Court of Appeal. In an unpublished decision issued on March 8, 2017, the court of appeal affirmed the judgment. Pet. at 3; Lodgment 1. A Petition for Review was denied on May 17, 2017. Pet. at 3; Lodgments 7-8.

Thereafter, Petitioner began another round of collateral challenges in the state courts. On July 27, 2018, Petitioner constructively filed a habeas petition in the Los Angeles County Superior Court. Lodgment 9; Resp., Exh. E (attesting that Petitioner gave his habeas petition to his housing officer on July 27, 2018). That petition was denied on August 23, 2018. Lodgment 10. On November 20, 2018, Petitioner constructively filed a habeas petition in the

---

[4] The Court has used the filing date as the petition is unsigned and contains no proof of service.

3

California Court of Appeal. Lodgment 11. That petition was denied on December 20, 2018 on the grounds that the petition raised "issues that could have been raised or were rejected on appeal, and [did] not state a prima facie case entitling petitioner to relief. (See In re Clark (1993) 5 Cal.4th 750, 765-66.)." Lodgment 12. Petitioner then filed a habeas petition in the California Supreme Court on February 15, 2019, which was denied without comment or citation to authority on June 26, 2019. Lodgments 13-14.

### III.
### DISCUSSION

Because the Petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), it is subject to the AEDPA's one-year statute of limitations, as set forth at 28 U.S.C. § 2244(d). See Patterson v. Stewart, 251 F.3d 1243, 1245 (9th Cir. 2001). Ordinarily, the limitations period runs from the date on which the prisoner's judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner does not appear to contend that he is entitled to a later trigger date under 28 U.S.C. § 2244(d)(1)(B)-(D), and the Court finds no basis for applying a later trigger date. As such, Section 2244(d)(1)(A) governs in this case.

As noted, the California Supreme Court denied Petitioner's Petition for Review on May 17, 2017. As such, Petitioner's conviction became final 90 days later, on August 15, 2017, when the period in which to petition the United States Supreme Court for a writ of certiorari expired. See Harris v. Carter, 515 F.3d 1051, 1053 n.1 (9th Cir. 2008); Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999).

Absent tolling, the AEDPA's one-year limitations period expired one year later, on August 15, 2018. Petitioner did not constructively file the instant Petition until July 4, 2019. Thus, absent tolling, the Petition is untimely. The

4

burden of demonstrating sufficient tolling, whether statutory or equitable, rests with Petitioner. See, e.g., Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Valdez v. Montgomery, 918 F.3d 687, 691 (9th Cir. 2019); Zepeda v. Walker, 581 F.3d 1013, 1019 (9th Cir. 2009). As explained below, Petitioner has not shown that he is entitled to sufficient tolling to render the Petition timely.

      **A.**    **<u>Statutory Tolling Does Not Render the Petition Timely</u>**

"A habeas petitioner is entitled to statutory tolling of AEDPA's one-year statute of limitations while a 'properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'" Nedds v. Calderon, 678 F.3d 777, 780 (9th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2)). Statutory tolling does not extend to the time between the date a judgment becomes final and the date the petitioner files his first state collateral challenge because during that time there is no case "pending." See Cross v. Sisto, 676 F.3d 1172, 1179 (9th Cir. 2012).

"The United States Supreme Court has held that applications for state post-conviction relief . . . will be deemed 'pending' for purposes of 28 U.S.C. § 2244(d)(2), even during the intervals between the denial of a petition by one court and the filing of a new petition at the next level . . . ." Stancle v. Clay, 692 F.3d 948, 953 (9th Cir. 2012) (alternations in original) (citations omitted); see also Carey v. Saffold, 536 U.S. 214, 219-21 (2002). However, such interval or "gap" tolling is unavailable if the petitioner unreasonably delays in seeking higher court review after a lower court petition is denied. See Saffold, 536 U.S. at 225-26; see also Maxwell v. Roe, 628 F.3d 486, 495-96 (9th Cir. 2010) ("AEDPA's statute of limitations will be tolled, however, only if the prisoner timely filed his subsequent petition in a higher state court.").

Under California law, a habeas petition is timely if it is filed within a "reasonable time." Evans v. Chavis, 546 U.S. 189, 192 (2006) (quoting In re Harris, 5 Cal. 4th 813, 828 n.7 (1993) (as modified)). California, however, has

not provided guidance as to what constitutes a "reasonable time." Maxwell, 628 F.3d at 496. The Supreme Court has held that, "[i]n the absence of (1) clear direction or explanation from the California Supreme Court about the meaning of the term 'reasonable time' in the present context, or (2) clear indication that a particular request for appellate review was timely or untimely," a federal habeas court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness," i.e., "whether the filing of the request for state-court appellate review (in state collateral review proceedings) was made within what California would consider a 'reasonable time.'" Chavis, 546 U.S. at 198. Contrary to Petitioner's contention (Resp. at 6; Opp. at 9-10), the Court "cannot infer from a decision on the merits, or a decision without explanation, that the California court concluded that the petition was timely." Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010); see also Chavis, 546 U.S. at 197.

The Supreme Court in Chavis observed that most states provide a short period – between 30 and 60 days – for an appeal to a higher court, a fact it considered in determining whether a delay was "reasonable" for purposes of statutory tolling. 546 U.S. at 201. After the Supreme Court's holding in Chavis, the Ninth Circuit has concluded that delays longer than the 30-to-60-day benchmark are not reasonable under California law, absent a showing of good cause for the delay. See Valdez, 918 F.3d at 692; Stewart v. Cate, 757 F.3d 929, 935-36 (9th Cir. 2014) (as amended).

Importantly, the court must examine the timing of each state habeas petition independently. "[I]f a prisoner timely files his or her first state habeas petition but does not timely file a second petition, then the prisoner is not entitled to tolling for the period following the denial of the first petition." Valdez, 918 F.3d at 690.

Here, Petitioner filed five habeas petitions in the state courts:

1. July 3, 2015 habeas petition in the California Court of Appeal denied on July 30, 2015 (Lodgments 3-4);
2. August 17, 2015 habeas petition in the California Court of Appeal denied on September 30, 2015 (Lodgments 5-6);
3. July 27, 2018 habeas petition in the Los Angeles County Superior Court denied on August 23, 2018 (Lodgments 9-10);
4. November 20, 2018 habeas petition in the California Court of Appeal denied on December 20, 2018 (Lodgments 11-12); and
5. February 15, 2019 habeas petition in the California Supreme Court denied on June 26, 2019 (Lodgments 13-14).

Because Petitioner's first two habeas petitions were filed and denied prior to the commencement of the limitations period, these petitions do not toll the statute of limitations. Waldrip v. Hall, 548 F.3d 729, 735 (9th Cir. 2008).

Petitioner constructively filed his third state habeas petition in the Los Angeles County Superior Court on July 27, 2018 and it was denied on August 23, 2018. As that petition was filed within the AEDPA's one-year limitations period, Petitioner is entitled to statutory tolling for the 27 days in which it was pending, extending the limitations period to September 11, 2018.

Petitioner is not entitled to tolling for the interval between the denial of his third state habeas petition and the filing of the fourth habeas petition. Petitioner constructively filed his fourth habeas petition in the California Court of Appeal on November 20, 2018, 89 days after the third habeas petition was denied. This delay is significantly longer than the 30-to-60-day benchmark and thus, unreasonable. See, e.g., Robinson v. Lewis, 795 F.3d 926, 930 (9th Cir. 2015) ("We have held that delays of 115, 101, and 81 days make a petition untimely unless the petitioner can show good cause."); Velasquez v. Kirkland, 639 F.3d 964, 967-68 (9th Cir. 2011) (rejecting statutory tolling for unjustified

delays of 91 and 81 days); Stancle, 692 F.3d at 956 (unexplained delay of 82 days unreasonable); Livermore v. Sandor, 487 Fed. App'x 342, 343-44 (9th Cir. 2012) (finding 76-day delay unreasonable); Dixon v. Kernan, 2016 WL 7485662, at *4 (C.D. Cal. Dec. 5, 2016) (89-day delay unreasonable), report and recommendation accepted by 2016 WL 7480258 (C.D. Cal. Dec. 29, 2016).

Furthermore, Petitioner has failed to provide an adequate explanation for the delay to the California Court of Appeal. See Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010) (per curiam) (noting that California law requires a habeas petitioner to provide an explanation and justification for any filing delay). In his fourth habeas petition, Petitioner provided no justification for his delay. Petitioner wrote, "No Delay," in response to the question on the form habeas petition asking him to explain any delay. Lodgment 11 at 6. Consequently, from the perspective of the California Court of Appeal, the 89-day delay was not adequately justified. See Chaffer, 592 F.3d at 1048 (finding 115-day and 101-day delays unreasonable where the petitioner's state habeas petitions failed to offer any justification for the delays).

Petitioner argues to this Court that the delay was the result of various transfers and limited access to the law library. Petitioner attempts to justify his delay are insufficient to excuse the lengthy gap between the third and fourth habeas petitions. Petitioner claims that he was transferred to the A-yard at Richard J. Donovan Correctional Facility ("RJD") on October 18, 2018, and did not receive his legal documents until approximately the second week of November 2018. Resp. at 3-4; Opp. at 4-6. Even if, as Petitioner claims, he did not have access to his legal documents from October 18, 2018 to approximately November 15, 2018, he has not adequately demonstrated diligence in pursuing habeas relief in the California Court of Appeal. The third habeas petition was denied on August 23, 2018; Petitioner provides no

explanation why he could not file his fourth habeas petition, which raised the same claims and contained virtually identical arguments as the third habeas petition, in the 2-month period prior to his transfer.[5] See Velasquez, 639 F.3d at 968 (denying gap tolling where "each of [petitioner's] habeas petitions [was] nearly identical to the petition that came before it"). During this time period, Petitioner accessed the law library 28 different times.[6] Lodgment 16. Although Petitioner claims generally that during prison transfers, he sometimes received "legal mail" from the court late (Resp. at 3), Petitioner does not contend that he did not timely receive the superior court's denial of his third habeas petition. Indeed, the prison mail logs reflect that Petitioner received mail from the Los Angeles County Superior Court on August 31, 2018, 8 days after the court issued the order denying the third habeas petition. Lodgment 15, Exh. B at 4-5. As such, Petitioner is not entitled to interval tolling between the denial of his third habeas petition and the filing of his fourth state habeas petition in the California Court of Appeal.

Moreover, Petitioner is not entitled to any further statutory tolling for his final two petitions because both petitions were filed after the expiration of the limitations period. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

Therefore, although Petitioner is entitled to statutory tolling, it is insufficient to render his Petition timely.

---

[5] Although Petitioner claims that the fourth habeas petition included an additional ten pages (Opp. at 7-8), the grounds for relief and supporting arguments remained the same.

[6] Petitioner faults Respondent for providing computer generated attendance sheets rather than the actual inmate sign-in sheets (Supp. Opp. at 8), but does not dispute the dates he attended the law library as reflected in Respondent's records.

**B.  Equitable Tolling Does Not Render the Petition Timely**

In addition to statutory tolling, the AEDPA's limitations period also is subject to equitable tolling in appropriate cases. See Holland v. Florida, 560 U.S. 631, 649 (2010). To be entitled to equitable tolling, a petitioner must show both: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented his timely filing. Id. The "threshold necessary to trigger equitable tolling [under the AEDPA] is very high, lest the exceptions swallow the rule." Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010) (citation omitted). A court may grant such tolling only where "'extraordinary circumstances' prevented an otherwise diligent petitioner from filing on time." Forbess v. Franke, 749 F.3d 837, 839 (9th Cir. 2014). Consequently, as the Ninth Circuit has recognized, equitable tolling will be justified in few cases. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (as amended); see also Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) ("To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.'" (alteration in original) (citation omitted)).

Petitioner contends that he is entitled to equitable tolling due to: (1) numerous prison transfers; (2) limited law library access; (3) competing deadlines; (4) his difficulty with the English language; and (5) his treatment with psychotropic medications. Resp. at 3-4; Opp. at 4-6, 8. As explained below, none of Petitioner's explanations warrant equitable tolling.

1.  Prison Transfers

Petitioner claims that multiple transfers impeded his ability to timely file his Petition. He claims he was placed in administrative segregation on June 20,

2018; transferred to administrative segregation at California State Prison, Los Angeles County on July 19, 2018; transferred to RJD, E-yard facility on August 16, 2018; transferred to the A-yard facility at RJD on October 18, 2018; and transferred to the E-yard facility at RJD on December 4, 2018. Due to these transfers, Petitioner maintains he did not have access to his legal documents between June 20, 2018 and August 16, 2018, and October 18, 2018 and mid-November 2018; and he sometimes received his "legal mail" from the court late. Further, when his property was returned on August 16, 2018, Petitioner discovered that some of his legal documents were lost or stolen. Resp. at 3-4, Exhs. D-F; Opp. at 4.

The denial of access to legal files may, in some circumstances, constitute an "extraordinary circumstance" beyond a petitioner's control for purposes of justifying equitable tolling of the limitations period. See Chaffer, 592 F.3d at 1049; see also Waldron-Ramsey, 556 F.3d at 1013. Here, however, even assuming Petitioner's allegations are true, he is not entitled to equitable tolling based on his argument regarding the lack of access to legal materials.

Petitioner initially contends he was denied access to his legal documents from June 20, 2018 to August 16, 2018, and when his property was ultimately returned to him, he noticed that some of his property was missing, including "legal documents and books." Resp. at 3-4, Exh. D. However, Petitioner has not shown that the denial of access to his legal documents caused his untimeliness. Petitioner does not identify any specific documents that he was denied, let alone explain why he needed his legal files to prepare a habeas petition. To the contrary, the record reflects that Petitioner was able to file his third state habeas petition during this period, while in administrative segregation and without access to his "legal documents." Indeed, despite Petitioner's purported lack of access to his legal documents, Petitioner filed a 144-page petition, which included legal authority, a recitation of the

underlying factual background, and exhibits. See Lodgment 9. As such, Petitioner has not shown that the lack of access to these documents prevented him from timely filing a habeas petition as he was able to file a state habeas petition without them. See De La Cruz v. Superior Court Cty. of L.A., 2019 WL 1211419, at *3 (C.D. Cal. Feb. 1, 2019) (petitioner not entitled to equitable tolling based on denial of legal documents because petitioner was able to file his habeas petition without them), report and recommendation accepted by 2019 WL 1205879 (C.D. Cal. Mar. 14, 2019); Campos v. McDonald, 2011 WL 2173774, at *4 (C.D. Cal. Jan. 25, 2011) (petitioner was not entitled to equitable tolling where he was able to file two earlier habeas petitions during the period in which he claims he lacked access to the law library and to his legal documents), report and recommendation adopted by 2011 WL 2162814 (C.D. Cal. June 2, 2011).

Petitioner also seeks equitable tolling based on the denial of access to his legal documents between October 18, 2018 and mid-November 2018 following a subsequent transfer. Again, however, Petitioner has failed to demonstrate that the lack of access to his legal documents caused his untimeliness and prevented him from timely filing a federal habeas petition. Rather, it was untimely because Petitioner did not proceed expeditiously through the state habeas process. Petitioner's third habeas petition was denied on August 23, 2018, almost two months before he was transferred and deprived of his legal documents. Petitioner provides no explanation regarding why he could not file a virtually identical habeas petition during this 2-month period, prior to the expiration of the limitations period on September 11, 2018.

Petitioner has not shown that he has been pursuing his rights diligently. Chaffer, 592 F.3d at 1049; Waldron-Ramsey, 556 F.3d at 1013. After his Petition for Review was denied, Petitioner waited until 20 days remained in the limitations period to begin the habeas process, and then waited until after

the limitations period expired before further pursuing his habeas remedies. All of Petitioner's claims are based upon facts that Petitioner knew, or should have known, at the time of his trial in 2015. Petitioner points to no reason he could not have pursued these claims in a habeas petition immediately after his trial, or at the latest, after the California Supreme Court denied his Petition for Review, when he was informed by appellate counsel of the one-year limitations period for filing federal habeas petitions. See Pet., Dkt. 1-10 at 3. Nothing in the record explains, much less justifies, Petitioner's lengthy delay.

Finally, Petitioner's allegation that his legal mail from the courts was sometimes delayed as a result of the multiple transfers is vague and conclusory. Petitioner does not identify any court filings he received in an untimely manner, let alone explain how any delay prevented him from timely filing a habeas petition. To the extent Petitioner contends that he received the superior court's denial of his third habeas petition on August 31, 2018 – 8 days after the denial, Petitioner is not entitled to equitable tolling on this basis. See Machuca v. Robertson, 2018 WL 5270493, at *8 (C.D. Cal. Aug. 29, 2018) (petitioner not entitled to any equitable tolling "for the normal mailing process that caused a few days of delay in his receiving" denial order), report and recommendation accepted by 2018 WL 5270490 (C.D. Cal. Oct. 22, 2018).

As such, Petitioner is not entitled to equitable tolling due to his lack of access to legal documents and multiple custody transfers.

### 2. Law Library Access and Other Court Matters

Petitioner's other arguments are similarly unavailing, and do not entitle him to equitable tolling. Petitioner also claims that he had limited law library access upon his transfer to the A-yard facility at RJD on October 18, 2018 because access was more "stringent and restricted," and without his legal documents, he could not obtain priority access. Opp. at 5-6. Routine restrictions on law library access are not extraordinary circumstances, and

13

therefore, do not equitably toll the limitations period. See Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (as amended) (recognizing that lack of access to library materials does not automatically entitle a petitioner to equitable tolling); Thao v. Ducart, 707 F. App'x 437, 438 (9th Cir. 2017) ("normal delays or restrictions on law library access—such as stays in administrative segregation—are not considered 'extraordinary' for purposes of establishing equitable tolling under AEDPA"); Lara v. Neven, 629 F. App'x 790, 792 (9th Cir. 2015) ("[N]either [petitioner's] limited access to the law library in prison, nor his lack of advice or assistance from counsel, nor their combination so interfered with his ability to file a timely federal petition as to allow for equitable tolling."). Further, Petitioner was not transferred until October 18, 2018, after the expiration of the limitations period, and thus, his limited access to the law library after his transfer could not have caused his untimeliness. Petitioner had ample time to access the law library and file his habeas petition prior to the September 11, 2018 deadline. See Lodgment 16. Indeed, as noted, the claims in the fourth habeas petition were virtually identical to the claims in the third habeas petition, including the factual and legal support for each ground for relief.

Petitioner claims he also was busy working on other legal matters, and not all of his time in the law library was spent on this case. See Opp. at 8; Supp. Opp. at 6-7. The fact that Petitioner was able to pursue other legal matters, however, undercuts Petitioner's arguments that he was prevented from timely pursuing habeas relief during this same time period, and suggests that Petitioner's own lack of diligence was the cause of his untimeliness. See Eichler v. Subia, 2010 WL 891248, at *9 n.9 (E.D. Cal. Mar. 8, 2010) ("petitioner's claims that the filing of the instant habeas petition was delayed because he was busy attending to his other court cases actually cut against his equitable tolling arguments" since his "initiation and continued prosecution of

these other lawsuits reflect[ed] that he was not unable to file his federal habeas petition at the time"). Accordingly, Petitioner is not entitled to equitable tolling based on his limited access to the law library after October 18, 2018. See Rhodes v. Kramer, 451 F. App'x 697, 698 (9th Cir. 2011) ("The district court did not clearly err in finding that limited library access did not prevent [petitioner] from timely filing his habeas petition, and [petitioner] has not demonstrated that an extraordinary circumstance beyond his control warrants equitable tolling."); Perkins v. California, 2019 WL 5606870, at *4 (C.D. Cal. Sept. 30, 2019) (petitioner was not entitled to equitable tolling based on his limited access to the law library where the record showed petitioner had ample time within the limitations period to file his petition), report and recommendation accepted by 2019 WL 5595232 (C.D. Cal. Oct. 29, 2019).

### 3. Limited Understanding of the English Language

In addition, Petitioner is not entitled to equitable tolling because he is not fluent in the English language. See Opp. at 8; Supp. Opp. at 7. In Mendoza v. Carey, 449 F.3d 1065, 1069 (9th Cir. 2006), the Ninth Circuit held that an alleged combination of a prison law library's lack of Spanish-language legal materials and a Spanish-speaking prisoner's inability to obtain translation assistance before the expiration of the statute of limitations might warrant equitable tolling. The petitioner in Mendoza alleged that the prison law library contained only English-language materials and provided only English-speaking clerks and librarians, and that the petitioner obtained the assistance of a bilingual inmate only after the statute of limitations had expired. Id. The Ninth Circuit held that, in order to show an entitlement to equitable tolling, a non-English speaking prisoner "must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source." Id. at 1070. "[A] petitioner

who demonstrates proficiency in English or who has the assistance of a translator would be barred from equitable relief." Id.

Here, Petitioner has not shown that his limited ability to understand English prevented him from timely filing his habeas petition. Petitioner does not allege that the prison law library lacked legal materials in his native language or that he was unable to obtain translation assistance from another inmate, library personnel, or other sources prior to the expiration of the statute of limitations. Nor has Petitioner demonstrated diligent efforts to obtain such assistance. As such, Petitioner has not shown entitlement to equitable tolling based on his purported difficulty with the English-language. See United States v. Aguirre-Ganceda, 592 F.3d 1043, 1046 (9th Cir. 2010) (concluding that the petitioner was not entitled to equitable tolling where he failed to demonstrate that "he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source" (quoting Mendoza, 449 F.3d at 1070)).

### 4. Treatment with Psychotropic Medications

Finally, to the extent Petitioner contends that he is entitled to equitable tolling because he was being treated with psychotropic medication (Opp. at 9), such contention does not warrant equitable tolling in this case. Although the Ninth Circuit has found that a prisoner's mental incompetency may constitute an extraordinary circumstance beyond a petitioner's control for purposes of justifying the application of equitable tolling to the AEDPA statute of limitations, Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2003); see also Bills, 628 F.3d at 1097; Roberts v. Marshall, 627 F.3d 768, 772 (9th Cir. 2010), the mere existence of a mental illness is insufficient to warrant equitable tolling. Turner v. Holland, 2015 WL 9813557, at *8 (C.D. Cal. Dec. 14, 2015) (citing Spitsyn, 345 F.3d at 799), report and recommendation accepted by 2016 WL 197713 (C.D. Cal. Jan. 12, 2016); Payne v. Valenzuela, 2015 WL

9914190, at *4 (C.D. Cal. Dec. 4, 2015), <u>report and recommendation accepted by</u> 2016 WL 304294 (C.D. Cal. Jan. 25, 2016). Rather, the petitioner must establish a causal connection between his mental illness and his failure to seek habeas relief on a timely basis. See <u>Bills</u>, 628 F.3d at 1099-1100; <u>Laws</u>, 351 F.3d at 923; <u>see also</u> <u>Bolarinwa v. Williams</u>, 593 F.3d 226, 232 (2d Cir. 2010) (petitioner seeking equitable tolling based on mental impairment must show how the mental illness impaired her ability to comply with the filing deadline, including a "'particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights'" (citation omitted)). The following two-part test must be satisfied in order to warrant equitable tolling based on a mental impairment:

> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

<u>Bills</u>, 628 F.3d at 1099-1100 (internal citation and footnote omitted).

In the present case, Petitioner has not demonstrated the existence of any severe mental impairment, and nothing in the record supports the conclusion that Petitioner suffered from a severe mental impairment preventing him from timely filing a federal habeas petition. Nor does Petitioner even argue that a

mental impairment prevented him from filing a timely petition or was the "but-for cause of any delay." See Bills, 628 F.3d at 1100. Rather, Petitioner contends that his psychotropic medication causes "dro[w]siness and excessive sleep periods that limit Petitioner's awake periods to access the law library when his property [was] returned . . . ." Opp. at 9. Petitioner's vague and conclusory allegation is insufficient to warrant equitable tolling. Even if there were some side effects from the medication Petitioner was taking, Petitioner has not demonstrated that it prevented him from understanding the need to file a timely federal habeas petition or the ability to do so. To the contrary, the record reflects that Petitioner regularly accessed the prison law library (Lodgments 16-17), and the prison mail logs reflect that Petitioner was actively pursuing legal matters during this time period. See Lodgment 15 at 15-31. Petitioner's ability to engage in litigation during this time period undermines his claim that the side effects from his medication prevented him from filing his habeas petition on time. See, e.g., Bravo v. Biter, 2018 WL 4223653, at *7 (C.D. Cal. Feb. 6, 2018) (petitioner's ability to file habeas petitions and other documents, earn his GED, correspond with the California Appellate Project, and request information from the law library reflected that petitioner's learning disability and side effects from his blood pressure medications did not prevent him from understanding the need to file a timely federal petition or the ability to do so), report and recommendation accepted by 2018 WL 4216691 (C.D. Cal. Sept. 5, 2018); Cole v. Soto, 2016 WL 836328, at *7 (C.D. Cal. Jan. 6, 2018) (petitioner not entitled to equitable tolling based on mental impairment where he was able to file several state habeas petitions during the period in which he claimed to have been suffering a mental impairment), report and recommendation accepted by 2016 WL 837894 (C.D. Cal. Mar. 2, 2016).

/ / /

/ / /

Accordingly, Petitioner is not entitled to equitable tolling, and the Petition is untimely.[7]

### IV.
### ORDER

IT IS THEREFORE ORDERED that:

1. Respondent's Motion to Dismiss (Dkt. 12) is granted in part; and

2. Judgment shall be entered denying the Petition and dismissing this action with prejudice.

Dated: January 09, 2020

_____
JOHN D. EARLY
United States Magistrate Judge

---

[7] In light of the Court's conclusion that the Petition is untimely, it is unnecessary to address Respondent's additional contention that four of Petitioner's claims are procedurally defaulted.